STEPHEN HUDAK, Appellant, *v.* HORNELL INDUSTRIES, INC., Respondent.

JOSEPH STIKA, Appellant, *v.* HORNELL INDUSTRIES, INC., Respondent.

Argued March 12, 1952; decided June 5, 1952.

*Albert E. Hollis* for appellants. I. The contract is clear and unambiguous and the trial court erred in attempting to construe the same. (17 C. J. S., § 294, pp. 683–685; *First Nat. Bank v. National Sur. Co.,* 228 N. Y. 469; *Streat Coal Co.* v. *Frankfurt Gen. Ins. Co.,* 237 N. Y. 60; *Central Union Trust Co.* v. *Trimble,* 255 N. Y. 88; *Heller* v. *Pope,* 250 N. Y. 132; *Wenig* v. *Glens Falls Ind. Co.,* 294 N. Y. 195; *Gillet* v. *Bank of America,* 160 N. Y. 549; *Grundt* v. *Shenk,* 222 App. Div. 82, 248 N. Y. 602; *London Produce Co.* v. *Poels & Brewster,* 199 App. Div. 623; *Matter of Loew's Buffalo Theatres,* 233 N. Y. 495; *Schweinburg* v. *Altman,* 145 App. Div. 377.) II. Neither the trial court nor the Appellate Division correctly interpretated the clear and unambiguous language of the contract. (17 C. J. S., § 296, pp. 702–707.) III. By the terms of the contract defendant agreed to employ the two plaintiffs for a definite period of one year. (*Rotnofsky* v. *Capitol Distributors,* 262 App. Div. 521.) IV. Defendant, having prevented plaintiffs from performing their part of the contract, must respond in damages. V. The closing of defendant's plant did not affect plaintiffs' rights under the contract. (*Central Union Trust Co.* v. *Trimble,* 255 N. Y. 88.)

*W. Earle Costello* for respondent. I. There was no contractual obligation requiring defendant to continue plaintiffs in its employ for any stated definite term; or to pay them their weekly wages subsequent to cessation of its business operations. (*Watson* v. *Gugino,* 204 N. Y. 535; *Rotnofsky* v. *Capitol Distributors,* 262 App. Div. 521.) II. The Trial Justice properly construed the contract and his determination as to its legal implications was entirely correct. (*Amelotte* v. *Dold Packing Co.,* 173 Misc. 477, 260 App. Div. 984; *Union Drawn Steel Co.* v. *National Labor Relations Bd.,* 109 F. 2d 587; *Uneeda Credit Clothing Stores* v. *Briskin,* 14 N. Y. S. 2d 964.) III. The trial court properly found the intention of the contracting parties as expressed in the language contained in such agreement. (C. J. S., Contracts, § 297.) IV. The issues raised by the pleadings as regards compliance with a condition precedent, i. e., a determination of wrongful discharge by arbitration, must necessarily be resolved in favor of defendant. (2 Williston on Contracts [Rev. ed.], § 364-A; *Evans* v. *Johnston,* 300 Ill. App. 78; *Kelly* v. *Grimshaw,* 161 Kan. 253; *Rolandez* v. *Star Liquor Dealers,* 257 App. Div. 97.)

Froessel, J. Plaintiffs in these companion actions, suing as third-party beneficiaries, seek damages for alleged breach of a contract made between defendant employer and the Machine Printers Beneficial Association, the union to which plaintiffs belonged since 1933. They had been employed by defendant since June, 1940, Hudak as foreman textile printer and Stika as journeyman printer. The union and defendant had entered into contracts annually since 1940. Their latest agreement, the one in controversy, was entered into on August 4, 1948, and provided, among other things, as follows:

" SECTION 1. SALARY AND HOURS

" The Company agrees to continue to employ the members of the Association now presently in the employ of the Company during the period covered by this Agreement and guarantees during said period to pay each journeyman printer a weekly wage of One Hundred Twenty ($120.00) Dollars per week.
\* \* \*

" SECTION 3.

" A printer may be discharged only for just cause; and, likewise, a printer shall have the right to withdraw from said employment. The cause for discharge shall be made known to said printer and to the District Director of the Association. If the District Director of the Association questions the sufficiency or fairness of the alleged cause of the discharge, the sufficiency or fairness of the cause of the discharge shall be determined in accordance with the procedure specified in Section 6 hereof. * * *

" SECTION 6.

" Whenever, during the life of this agreement, any question relating to the discharge of a journeyman printer, or to wages and working conditions * * * cannot be agreed upon between representatives of the Company and the Association, it is to be submitted for decision to a Board of Arbitration * * *.

" SECTION 9.

" This Agreement * * * shall be in full force and effect from and after the 1st day of August, A.D. 1948, up to and including the 31st day of July, A.D. 1949."

Plaintiff Hudak also claims to have had a separate oral agreement with defendant, pursuant to which he was to receive as foreman extra compensation of $23 per week.

On January 31, 1949, plaintiffs were told there would be no work for the rest of the week. The next day, defendant discontinued its machine dye printing operations and closed its business shortly thereafter. It was sold at auction on March 24, 1949. The corporation was still maintained, however, for the purpose of liquidating certain business assets. Defendant's attorney testified that defendant had operated at substantial losses in 1948 and 1949, but that it was never bankrupt or insolvent. Plaintiffs subsequently obtained employment with other firms for part of the unexpired period of one year mentioned in section 9 of the foregoing agreement, and also received some unemployment compensation.

After a trial before a jury, motions were made for a directed verdict and the trial court dismissed the complaints, concluding that the agreement did not constitute a contract to hire plaintiffs for a definite term, which determination was unanimously

affirmed by the Appellate Division without opinion. Upon this appeal, appellants contend: (1) that the lower courts erred in their interpretation of the contract, and (2) by the terms thereof, defendant agreed to employ plaintiffs for the period of one year. Defendant maintains (a) that the agreement did not constitute a contract of employment for a definite term, but was nothing more than a standard collective bargaining agreement; (b) that if construed as a personal employment contract, it lacked mutuality; (c) that plaintiffs failed to comply with a condition precedent, viz., a determination by arbitration of the wrongfulness of the discharge; and (d) that plaintiffs were not proper parties plaintiff.

Here, we do not merely have the ordinary collective bargaining agreement providing for the employment of union labor generally, but much more. In its first paragraph, the agreement designates the union as " ' the Association ' (which term shall include its present members and those persons who may become members after the date of this Agreement) ". By section 1 thereof, as before noted, defendant " agrees to continue to employ " the union's members now presently in its employ " during the period covered by this Agreement [one year] and guarantees during said period to pay each journeyman printer a weekly wage of One Hundred Twenty ($120.00) Dollars per week."

It would be difficult indeed to employ clearer language to express a definite and unequivocal promise on the part of defendant to employ plaintiffs for a stipulated compensation and for a fixed period of one year; " agrees  *  *  *  to employ " and " guarantees  *  *  *  to pay " are indicative of contractual obligations. There were but two other journeyman printers — four in all — who were members of the union then in the employ of defendant. The description was virtually tantamount to naming them, and the designation " Association " expressly included them. Defendant and its approximately one hundred and fifty other employees were dependent upon the concededly special skill of these four men.

In concluding that section 1 of the agreement merely identifies those printers who are to be employed during the term of the contract should operations continue, the trial court relied on *Rotnofsky* v. *Capitol Distributors Corp.* (262 App. Div. 521).

That case is clearly distinguishable. There, a labor union to which plaintiff belonged, entered into a contract with defendant employer. The contract was a typical collective bargaining agreement, nothing more. It provided that defendant would employ only chauffeurs and helpers who were members of the contracting union. The agreement did not include the right of continuous employment for the balance of the contract period; it related solely to the period during which the collective bargaining agreement would be enforcible. The purpose of the agreement was to insure the retention of *union* men, and not to provide any fixed period of continuous employment for *individual* employees.

The agreement before us, however, specifically provides that *designated* employees were to be employed for the contract period, and was limited to that small group of union members " now presently in the employ of the Company ". It is obvious that the parties intended the agreement to be more than a mere contract for the hiring of union men generally. In view of the unambiguous language of the contract, it bears no other reasonable construction than a specific undertaking on the part of defendant to hire plaintiffs for a fixed period and for a stipulated compensation, as it had done for a number of years prior thereto.

Nor do we find lack of mutuality here because an employee might withdraw on giving one week's notice. The agreement conferred other benefits upon the employer which were ample consideration for the employer's undertaking. " For the purposes of facilitating the peaceful adjustment of differences that may arise from time to time and of promoting harmony and efficiency to the end that the company, together with the Association and its members, may be mutually benefited ", the union gave the employer a labor contract, and promised, among other things, to order its members to return to work in the event of an unauthorized work stoppage or strike and to declare publicly that such action is unauthorized. Thus, valid consideration ran to defendant from the union " and its members " for defendant's undertaking to employ plaintiffs for the fixed period.

Nor may defendant avoid its contractual obligations because of the discontinuance of its business where, as here, it remains a solvent corporation, there is no impossibility of performance,

and its dissolution is not "involuntary" or compulsory (*People* v. *Globe Mut. Life Ins. Co.,* 91 N. Y. 174, 179–180; *Parsil* v. *Emery,* 242 App. Div. 653, 654; 6 Williston on Contracts, § 1960, pp. 5500–5501; Restatement, Contracts, § 459, illustration 10; see, also, *Carouso* v. *Empire Case Goods Co.,* 297 N. Y. 514; *Brearton* v. *De Witt,* 252 N. Y. 495, 501; *Assets Realization Co.* v. *Roth,* 226 N. Y. 370, 376; Stock Corporation Law, § 105, subds. 8, 9).

Defendant's contention that plaintiffs may not maintain these actions inasmuch as they failed to arbitrate any question as to the wrongfulness of the discharge, pursuant to sections 3 and 6 of the agreement, is likewise without merit. The record does not disclose that there was a " discharge " which was " made known " to the district director; no dispute arose between defendant and the Association. The instant action is between two individual employees and defendant.

Defendant's final contention that plaintiffs are not proper parties plaintiff must also fall. Inasmuch as the contract directly affected these individual employees, there appears to be no good reason why they may not assert their rights thereunder as third-party beneficiaries (*Gulla* v. *Barton,* 164 App. Div. 293; see, also, *J. I. Case Co.* v. *Labor Board,* 321 U. S. 332, 336; *Barth* v. *Addie Co.,* 271 N. Y. 31; *Lawrence* v. *Fox,* 20 N. Y. 268; 81 A. L. R. 1271, 1279; 95 A. L. R. 10, 41).

With respect to plaintiff Hudak's claim for $23 a week for the unexpired period of the contract as additional compensation for his services as foreman, it appears that his oral agreement with defendant in this respect was separate and apart from the union contract. Whether the oral agreement was for the period specified in the union contract or terminable at will, and whether Hudak sustained any damages thereunder, are questions of fact to be determined by the trial court.

In each case: The judgment of the Appellate Division and that of Trial Term should be reversed, with costs to abide the event, and the case remitted to Trial Term for further proceedings not inconsistent with this opinion.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FULD, JJ., concur.

Judgments reversed, etc.